UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **01-7240** **CIV-MOORE**

MAGISTRATE JUDGE

HYPOWER, INC.,

    Plaintiff,

v.

SIECOR OPERATIONS, L.L.C.,

CORNING CABLE SYSTEMS,

TAW NORTH,

ANDREW JACKSON,

    Defendants.

## COMPLAINT

Plaintiff, Hypower, Inc., for its Complaint against Defendants, Siecor Operations, L.L.C., Corning Cable Systems, Taw North, and Andrew Jackson (collectively referred to as "Defendants") states as follows:

### Parties, Jurisdiction and Venue

1. Plaintiff, Hypower, Inc. ("Hypower"), is a corporation organized and existing under the laws of the State of Nevada, is duly registered to do business in the State of Florida, and maintains its principal place of business in Broward County, Florida.

2. Upon information and belief, Defendant, Siecor Operations, L.L.C. ("Siecor"), is a limited liability company, having its principal place of business in Hickory, North Carolina.

3. Upon information and belief, Defendant, Corning Cable Systems ("Corning"), is a limited liability company, having its principal place of business in Hickory, North Carolina.



Upon information and belief, Corning is the successor-in-interest to Siecor and/or the new company name for Siecor. For purposes of this Complaint, Siecor and Corning will be collectively referred to as the "Siecor Defendants."

4. Upon information and belief, Defendant, Taw North, is a resident of the State of North Carolina and was an employee of the Siecor Defendants at all times relevant to this action.

5. Upon information and belief, Defendant, Andrew Jackson, is a resident of the State of North Carolina and was an employee of the Siecor Defendants at all times relevant to this action.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum or value of $75,000.00, exclusive interest and costs, and is between citizens of different states.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims alleged in this action occurred within this District and the Defendants are subject to personal jurisdiction in this District.

## General Allegations

### The Project

8. Hypower entered into a fixed-price, design-build contract ("Contract") with the Orlando-Orange County Expressway Authority ("OOCEA"), in which Hypower supplied certain labor and materials for OOCEA's Fiber Optic Network Backbone Project for the Holland East-West Expressway, Central Florida Greene Way, and Bee Line Expressway, Authority Office Facilities, Mainline and Ramp Toll Plazas ("the Project"). The OOCEA's design consultant and agent on the Project was Post, Buckley, Schuh & Jernigan, Inc. ("PBSJ").

2

9. Among other things, the Contract required Hypower to procure and install fiber optic cable, with the cable core meeting the following requirements: "[T]he cable core shall be filled with a non-hygroscopic, non-nutritive to fungus, electrically non-conductive, homogeneous gel. The gel shall be free from dirt and foreign matter." The cables containing the gel are known as "flooded cables." Hypower's pricing for the Contract was based on procuring flooded cables. The fiber optic cable was scheduled to be delivered and installed on the Project beginning in 1999.

## The Purchase Order

10. In 1997, Hypower contacted Siecor regarding the possibility of Hypower purchasing the required flooded cables from Siecor. Specifically, in the late Summer / early Fall of 1997, Hypower's Stephen Rabolli met with Defendant, Andrew Jackson, in Hypower's office in Fort Lauderdale, Florida. Mr. Jackson informed Mr. Rabolli that the cable specified in the Contract would no longer be manufactured and/or available after April of 1998. In fact, Siecor furnished product literature to Hypower indicating that Siecor would manufacture flooded cables only through the end of 1997. A copy of Siecor's product literature is attached and incorporated by reference herein as Exhibit A. However, Hypower did not need fiber optic cable until 1999.

11. As a substitute for the flooded cables, Mr. Jackson offered to furnish Siecor's "ALTOS" cable with "Innovative Dry" water swellable tape. The ALTOS cable sold at a price less than the flooded cable.

12. Mr. Rabolli indicated to Mr. Jackson that the OOCEA expressly specified a flooded cable and that Mr. Rabolli was unsure whether the OOCEA would accept the substitution. However, Mr. Jackson assured Mr. Rabolli that the substitution would be

3

acceptable to the OOCEA.

13.     Based on Mr. Jackson's representations that Siecor would no longer manufacture or otherwise have available for sale a flooded cable after April of 1998 and that the OOCEA would approve the substitution of cables, Hypower requested from the OOCEA (through its design consultant and agent, PBSJ) permission for Hypower to substitute the ALTOS cable for the contractually-required flooded cables.

14.     Hypower was permitted by the OOCEA to furnish the ALTOS cable and issued a purchase order dated October 8, 1998 to Siecor for the ALTOS cable in the initial amount of $1,266,640.00. This purchase order amount was subsequently increased to $1,276,428.60 by change order dated May 13, 1999. Siecor accepted the terms and conditions of Hypower's purchase order and delivered fiber optic cable to Hypower pursuant to the purchase order and subsequent change order.

15.     Among other terms and conditions, the purchase order stated the following: "ALL MATERIAL SHALL COMPLY WITH THE PLANS AND SPECIFICATIONS OF OOCEA PROJECT 276." Further, the purchase order contained the following:

> All communications shall be direct with PURCHASER [Hypower]. VENDOR [Siecor] shall not communicate directly with the owner, any other contractor, or the design professional regarding the materials described in this order, or anything arising out of this order. If communication is deemed necessary with the owner, any other contractor, or design professional, the communication shall be made by VENDOR to PURCHASER with a request for forwarding to the other party. **Any breach of this obligation to not communicate directly with the owner, any other contractor, or the design professional shall be a material breach of this agreement.**
> [Emphasis added]

16.     Because Hypower had included the costs of the flooded cables in the Contract's

4

lump sum price, Hypower was entitled to any savings resulting from the product substitution.

### The Siecor Lawsuit, Mediation, and Settlement

17.     On or about December 21, 1999, Siecor filed a lawsuit in this Court against Hypower and Hypower's surety, United States Fidelity & Guaranty Company ("USF&G"), seeking payment under the purchase order in the amount of $996,659.13 ("Siecor Lawsuit").

18.     Pursuant to the Court's order of referral to mediation and by agreement of the parties, on October 17, 2000, Siecor and Hypower participated in a mediation conference with their respective counsel in Miami, Florida. At the conclusion of the mediation, Siecor and Hypower agreed to settle the Siecor Lawsuit for the sum of $996,659.13, with an initial payment of $25,000.00 and subsequent payments of $15,000.00 for each month that the principal amount remained outstanding.

### The OOCEA Arbitration

19.     On or about February 4, 2000, Hypower filed a demand for arbitration against the OOCEA, seeking damages in excess of $6 million related to the Project. Hypower's claim included moneys owed to Siecor under the purchase order. Arbitration hearings were held during the months of November and December 2000, and January 2001.

20.     During the arbitration hearings, the OOCEA presented evidence regarding Hypower's substitution of the ALTOS cable for the originally-specified flooded cable.

21.     Specifically, the OOCEA presented a November 27, 2000 letter from Defendant, Taw North, addressed to Matt D'Angelo of PBSJ, the OOCEA's design consultant and agent for the Project, in which Mr. North with the assistance of and in concert with Defendant, Andrew Jackson, addressed questions regarding the ALTOS cable's compliance with the Project's

5

specifications. A copy of the November 27, 2000 letter is attached and incorporated by reference herein as Exhibit B. In that letter, Mr. North stated that the Siecor Defendants did offer a flooded cable called a "Mini Bundle" cable as late as November 1, 2000. This statement was directly contrary to the statements and representations previously made by Mr. Jackson to Hypower's Steve Rabolli that Siecor would no longer manufacture a flooded cable after April 1998.

22.  At no time prior to the disclosure of the November 27, 2001 letter was Hypower informed by the Defendants that Defendants North and Jackson were actively communicating and cooperating directly with the OOCEA and PBSJ in the OOCEA's defense against Hypower's claims. During the mediation and subsequent negotiations of the final settlement agreement between Hypower and Siecor, Hypower was unaware and the Defendants failed to disclose that Defendants North and Jackson were actively communicating and cooperating directly with the OOCEA and PBSJ in the OOCEA's defense against Hypower's claims. At no time did Hypower consent to such communication and cooperation.

23.  The November 27, 2001 letter raised doubts regarding Hypower's compliance with the contract specifications, damaged Hypower's credibility before the arbitration panel, and adversely impacted the amount due and owing to Hypower in the arbitration. The letter enabled the OOCEA to argue that Hypower owed the OOCEA a credit in excess of $500,000.00 due to the substitution of cables.

24.  The Defendants' improper actions and conduct severely compromised and damaged Hypower's negotiating position during subsequent settlement discussions with the OOCEA.

### Count I

6

## Breach of Contract
### (Against Siecor Defendants)

25. Hypower re-alleges and incorporates the allegations in Paragraphs 1 through 24 as if set forth in full herein.

26. The Siecor Defendants had a contractual obligation not to communicate directly with the OOCEA or its design consultant and agent, PBSJ, relating to the materials furnished by Siecor for the Project.

27. The actions of the Siecor Defendants' employees in actively communicating and cooperating directly with the OOCEA and PBSJ in the OOCEA's defense against Hypower's claims related to the Project was a material breach of the contract between Siecor and Hypower.

28. As a direct and proximate cause of the Siecor Defendants' material breach of contract, Hypower has suffered damages of at least $500,000.00.

29. As a direct and proximate cause of the foregoing breach, Hypower has been caused to retain undersigned counsel and to pay undersigned counsel a reasonable attorneys' fee which the Siecor Defendants are responsible for pursuant to the terms of the contract between Hypower and the Siecor Defendants.

WHEREFORE, Plaintiff, Hypower, Inc., demands judgment for damages against Siecor in excess of $500,000.00, together with reasonable attorneys' fees, interest, and such further relief as this Court deems just and proper.

## Count II
### Tortious Interference with Contract
### (Against Siecor Defendants)

30. Hypower re-alleges and incorporates the allegations in Paragraphs 1 through 28 as

7

if set forth in full herein.

31. The Siecor Defendants had knowledge of the Contract between Hypower and the OOCEA.

32. The Siecor Defendants through their employees intentionally and willfully communicated with and assisted the OOCEA and PBSJ during the arbitration proceedings to satisfy their own business interests, including the promotion of Corning products for future use in OOCEA projects. Such communication and assistance was to the detriment of Hypower and without justification or privilege.

33. The Siecor Defendants' actions and conduct induced and caused the OOCEA to breach the Contract by refusing to pay Hypower the full amounts due for the fiber optic cable.

34. As a direct and proximate cause of the Seicor Defendants' actions and conduct, Hypower has suffered damages of at least $500,000.00.

WHEREFORE, Plaintiff, Hypower, Inc., demands judgment for damages against the Siecor Defendants, jointly and severally, in excess of $500,000.00, together with interest, and such further relief as this Court deems just and proper.

## Count III
### Tortious Interference with Contract
### (Against Taw North and Andrew Jackson)

35. Hypower re-alleges and incorporates the allegations in Paragraphs 1 through 34 as if set forth in full herein.

36. Defendants, Taw North and Andrew Jackson, had knowledge of the Contract between Hypower and the OOCEA.

37. Messrs. North and Jackson intentionally and willfully communicated with and

8

assisted the OOCEA and PBSJ during the arbitration proceedings to satisfy their own personal interests, including the promotion of Corning products for future use in OOCEA projects. Such communication and assistance was to the detriment of Hypower and without justification or privilege.

38. The actions and conduct of Messrs. North and Jackson induced and caused the OOCEA to breach the Contract by refusing to pay Hypower the full amounts due for the fiber optic cable.

39. As a direct and proximate cause of the actions and conduct of Messrs. North and Jackson, Hypower has suffered damages of at least $500,000.00.

WHEREFORE, Plaintiff, Hypower, Inc., demands judgment for damages, jointly and severally, against Defendants, Taw North and Andrew Jackson in excess of $500,000.00, together with interest, and such further relief as this Court deems just and proper.

## Count IV
## Fraud
### (Against Seicor, Corning, Taw North and Andrew Jackson)

40. Hypower re-alleges and incorporates the allegations in Paragraphs 1 through 39 as if set forth in full herein.

41. Hypower contacted Seicor and Andrew Jackson in 1997 regarding the purchase of fiber optic cable. Seicor and Andrew Jackson represented that the flooded cable specified for the OOCEA Project would no longer be manufactured or available after 1997.

42. Seicor and Andrew Jackson urged Hypower to substitute the originally specified cable with a "dry" cable, designated as an "ALTOS" cable by Seicor, based on the representation that the originally specified cable would no longer be available after 1997. The representation is

9

confirmed in product literature delivered by Seicor and Andrew Jackson to Hypower in the fall of 1997 and attached hereto as Exhibit A.

43. Seicor and Andrew Jackson misrepresented the availability of the originally specified cable in order to mislead Hypower, build market share for the newly released "ALTOS" cable product, and to generate profits for the corporate benefit of Seicor and the personal remuneration of Andrew Jackson.

44. Relying upon the representations of Seicor and Andrew Jackson, Hypower proceeded to request and, ultimately, received authorization from OOCEA to furnish the "ALTOS" cable in lieu of the originally specified cable.

45. During the arbitration with OOCEA regarding the products and services provided by Hypower for the OOCEA project, Hypower was confronted with a claim by OOCEA that Hypower had misrepresented the need for the cable substitution.

46. Without Hypower's knowledge or consent, on or before November 27, 2000 and during the pendency of the Hypower/OOCEA arbitration proceedings, Seicor, Corning, Andrew Jackson and Taw North advised OOCEA representatives, and conspired with the OOCEA representatives, to create a letter that would be used as evidence in the arbitration for proof that the originally specified cable was available after 1997 and until November 1, 2000.

47. The conduct by Seicor, Corning, Andrew Jackson and Taw North to Hypower and OOCEA was carried out with malicious and deliberate intent for the purpose of damaging Hypower and its business and with the expectation that Seicor, Corning, Andrew Jackson and Taw North would gain favor with OOCEA and PBSJ in order to reap the benefit of future business opportunities, profit on future sales and personal gain.

10

WHEREFORE, Plaintiff, Hypower, Inc., demands judgment, jointly and severally, for compensatory damages against Defendants, Seicor, Corning, Taw North and Andrew Jackson in excess of $500,000.00, punitive damages of $1,000,000, together with interest, and such further relief as this Court deems just and proper.

Dated: __7/23/01__            Respectfully Submitted,

**HYPOWER, INC.**

By: _____
Adam Linkhorst, Esq.
Florida Bar No. 0055379
Leiby Taylor Stearns Linkhorst and Roberts, PA
1390 N. University Drive
Fort Lauderdale, Florida 33322

11

**Q:**

*Will ALTOS cable replace Siecor's traditional Mini Bundle® cable product line?*

**A:**

Yes, eventually. Although ALTOS cables are our preferred material and design combination, we anticipate selling flooded loose tube cables with our current buffer tube materials through the end of 1997 due to contractual agreements.

**Q:**

*What fiber counts are available in ALTOS cables?*

**A:**

ALTOS cables are available in 2 to 288 fiber counts.

**Q:**

*Are there any significant craft handleability differences with ALTOS cables?*

**A:**

Siecor Recommended Procedures (SRPs) outline the methods of sheath removal for ALTOS cables. The major differences include removal of the tape(s) and yarns and the absence of flooding compound to clean. ALTOS flooded cables are prepared for termination using the same methods currently employed for Siecor's existing loose tube products. With either product, you will notice that the tubes are more flexible and easier to route in closures.


EXHIBIT A

**FACSIMILE**
**Transmittal Sheet**

To: Matt D'Angelo

Fax No: (407) 647-4281

From: Taw North

Telephone: 01-828-327-5514
Fax: 01-828-327-5533

Pages to follow: 1

Date: November 27, 2000

Comments:

Matt,

I apologize for sending this again. I thought it was okay to send, so I faxed you another copy and sent one to Andy Jackson. He then forwarded it to someone in corporate communications and they made some changes. So, here it is again. It says the same thing, but is worded different. I decided that it would be easier to fax it to you than to discuss why it needed to be revised again. Hope this isn't too much trouble. Just throw away the letters you don't want to use. Sorry for the inconvenience.

Taw

EXHIBIT
B

Corning Cable Systems  t 828 327-5000
800 17th Street NW     f 828 327-5533
PO Box 489             www.corning.com
Hickory, NC 28601

November 27, 2000

Matt D'Angelo
Post, Buckley, Schuh and Jernigan, Inc.
Winter Park Plaza
1560 Orange Avenue, Suite 700
Winter Park, Florida 32789

Dear Mr. D'Angelo:


CORNING

First, thank you for your interest in Corning Cable Systems and our products.

I am writing to respond to your questions concerning the compliance of Corning Cable Systems ALTOS® cable to the attached specification for the OOCEA FON project. Our ALTOS cable meets the specifications with the following one exception (bolded): Paragraph 2.3.4.12 states that, "the cable core shall be filled with a non-hygroscopic, non-nutritive to fungus, electrically non-conductive, homogeneous gel. The gel shall be free from dirt and foreign matter."

Please note that cables containing gel are called "flooded cables." Corning Cable Systems (formerly Siecor) did offer a flooded cable called Mini Bundle® cable until November 1, 2000 but has replaced this flooded cable design with Corning Cable Systems ALTOS cable with the innovative Dry™ water swellable tape in lieu of the gel. Since the development of ALTOS cable, Corning Cable Systems recommends it instead of Mini Bundle cable because of its design improvements that increase ease of handling during installation. Please note that the tapes in Corning Cable Systems ALTOS cable are applied longitudinally around the outside of the stranded tubes/fillers and are water swellable, non-nutritive to fungus, electrically non-conductive, homogeneous and free from dirt and foreign matter. The water swellable tape is an installation enhancement to the gel filled core design and offers comparable performance.

I have included the generic specification for Corning Cable Systems ALTOS cables for your reference. If you have any further questions, please feel free to contact me.

Sincerely,

Taw North
Applications Engineer
Corning Cable Systems
t: 828 327-5514
f: 828 327-5533
taw.north@corning.com

O-507

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**
Hypower, Inc.

CIV-MOORE

**DEFENDANTS**
SEICOR OPERATIONS, G.L.C.
CORNING CABLE SYSTEMS,
TAW NORTH, AND ANDREW
JACKSON

01-7240  MAGISTRATE JUDGE O'SULLIVAN

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  BROWARD
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  NORTH CAROLINA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
ADAM LINKHORST
LEIBY TAYLOR STEARNS LINKHORST AND ROBERT
1390 N. UNIVERSITY DRIVE
PORT LAUDERDALE, FL 33322

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, (BROWARD), PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Cpl A-Nov M 24D - Moore O'Sullivan

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

DIVERSITY JURISDICTION PURSUANT TO 28 USC 1332
VENUE PURSUANT TO 28 USC 1391; CLAIM IS FOR BREACH
OF CONTRACT, TORTIOUS INTERFERENCE AND FRAUD

IVa. __5__ days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| | ☐ 330 Federal Employers Liability | | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | A LABOR | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | B ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| B ☐ 220 Foreclosure | ☐ 442 Employment | *Habeas Corpus:* | ☐ 790 Other Labor Litigation | **A FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ★ ☐ 530 General | B ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ★ ☐ 890 Other Statutory Actions *A or B* |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights *A or B* | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Refiled   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint.
**JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions)
JUDGE  Huck     DOCKET NUMBER  99-7656 CIV

DATE  7/23/01
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY: Receipt No. 532918   Amount: $150.00
Date Paid: 07-23-01

UNITED STATES DISTRICT COURT
S/F  I-2